Stowell v. Action Moving & Storage, Inc. (2005-532)

2007 VT 46

[Filed 01-Jun-2007]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 46

 No. 2005-532


 Arthur Stowell Supreme Court

 On Appeal from
 v. Chittenden Superior Court


 Action Moving & Storage, Inc. January Term, 2007


 Richard W. Norton, J.

 Thomas C. Nuovo of Bauer, Gravel, Farnham, Nuovo, Parker & Lang,
 Burlington, for Plantiff-Appellant.

 Gary W. Lange of Swanson & Lange, LLP, Burlington, for Defendant-Appellee.


 PRESENT: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and 
 Morse, J. (Ret.), Specially Assigned


 ¶ 1. DOOLEY, J. Plaintiff Arthur Stowell appeals the superior
 court's order denying penalties and attorney's fees under 21 V.S.A. § 347,
 claiming his employer, defendant Action Moving and Storage, Inc.,
 improperly withheld commission payments in violation of § 342. We affirm
 the court's order to the extent it held that commission payments are wages
 within the meaning of Vermont's wages-and-medium-of-payment law. We
 reverse the court's order, however, to the extent it held that defendant
 did not violate § 342 and plaintiff was not entitled to penalties under §
 347. We hold that plaintiff is entitled to double damages under § 347 and
 remand for a determination of costs and attorney's fees pursuant to that
 statute. 
 
 ¶ 2. The facts are as follows. Defendant employed plaintiff as a
 truck driver from January to November 2002. Plaintiff initially performed
 local hauling jobs, for which he was paid an hourly wage. In April 2002,
 plaintiff began performing long-haul trucking jobs, for which he was paid
 by commission, until he voluntarily resigned in November 2002. 

 ¶ 3. In 2002, defendant was an agent of Atlas Van Lines, Inc.
 ("Atlas"). Atlas divided moving jobs between defendant and other agents
 and distributed the revenue accordingly. After each move, Atlas provided
 defendant a moving-distribution sheet showing the amount of money paid each
 agent for each aspect of the job. Upon receiving the moving-distribution
 sheet, defendant would determine the commission payment due plaintiff after
 subtracting advances and other expenses. Defendant completed a driver's
 commission sheet each week which provided plaintiff with a running total of
 commission payments, advances, and expenses.

 ¶ 4. Plaintiff received expense and commission advances of $900 per
 week (FN1) and received the balance of the commission for each move about
 six weeks after the move was completed. Defendant occasionally paid for
 fuel expenses and Federal Express shipping charges which were deducted from
 plaintiff's commission payments. Plaintiff was also responsible for
 damages to the goods he shipped, and defendant held $1,000 of plaintiff's
 commission aside as a reserve for potential claims. Plaintiff was entitled
 to the balance of the reserve when the claims period expired. The superior
 court found the claims period was "several months." (FN2) 
 
 ¶ 5. Plaintiff resigned in November 2002, and on December 6, 2002,
 alleged he was owed additional commission payments. Defendant made
 payments to plaintiff of $1,094.88 on December 13, 2002, and $800 on
 January 17, 2003. Plaintiff subsequently claimed he was entitled to
 further commission payments. After reconciling advances and other
 payments, defendant claimed it had actually overpaid plaintiff and refused
 further payments. Plaintiff filed suit on January 23, 2003. 

 ¶ 6. After two days of trial, the superior court found that
 plaintiff was entitled to $280.24 on a common law breach-of-contract
 theory. The court first found that defendant's "bookkeeping records . . .
 [were] wanting to say the least" and that for many of the commission
 calculations there were no explanations for the figures. It went through
 an item-by-item analysis of each party's claims and found the net
 underpayment to be $280.24. The court arrived at this figure by
 subtracting "pick and hold" charges ($1015.00), fuel charges ($1,197.25),
 Federal Express shipping charges ($118.12), and damage claims ($727.67)
 from the total of all commission payments due plaintiff over the period of
 his employment. It subtracted from the net total the commission payments
 and advances actually paid to plaintiff to arrive at the final number. The
 court concluded that plaintiff's commission payments were wages under 21
 V.S.A. § 342, but did not find a violation of that section and refused to
 assess penalties and attorney's fees for nonpayment as provided in 21 V.S.A
 § 347. In response to plaintiff's post-trial motion, the court struck the
 original judgment of $280.24 and entered judgment for plaintiff in the
 amount of $2,740.72. The new amount reflected the entire unpaid commission
 including a part that was to be paid to a third party at plaintiff's
 direction. The superior court ordered defendant to pay plaintiff this
 amount, but denied plaintiff's renewed request for penalties and attorney's
 fees under § 347. Plaintiff appealed. 


 ¶ 7. On appeal, plaintiff claims the court erred in denying
 penalties under § 347. To resolve this question, we address four issues in
 turn: (1) whether plaintiff's commission payments were wages under § 342;
 (FN3) (2) if so, whether defendant violated § 342 by withholding them; (3)
 whether plaintiff is entitled to penalties under § 347; and (4) the amount
 of penalties due. 

 I.

 ¶ 8. This case arises out of Vermont's wages-and-medium-of-payment
 statutes, see 21 V.S.A. §§ 341-347, the overriding intent of which is to
 ensure that workers are paid in a timely manner. See State v. Carpenter,
 138 Vt. 140, 143, 412 A.2d 285, 287 (1980) (explaining intent of § 345 as
 fostering "regular payment of wages to employees" through penalizing
 nonpayment); Zablow v. Dep't of Employment Sec., 137 Vt. 8, 9, 398 A.2d
 305, 306 (1979) (per curiam) (explaining employer's duty under § 342 to
 "pay their employees in a timely manner"). As remedial statutes, they must
 be liberally construed. Carter v. Fred's Plumbing & Heating, Inc., 174 Vt.
 572, 574, 816 A.2d 490, 493 (2002) (mem.). 
 
 ¶ 9. The superior court concluded that plaintiff's commission
 payments were wages under § 342. The various subsections of that section
 specify when an employer must pay "the wages earned by such employee." 21
 V.S.A. § 342(a). Whether commission payments are wages is a question of
 statutory interpretation which we review de novo. Wright v. Bradley, 2006
 VT 100, ¶ 6, ___ Vt. ___, 910 A.2d 893. When interpreting statutes, our
 goal is to effectuate the intent of the Legislature. Id. To do so, we
 look first to the language of the statute and, if the meaning is clear,
 enforce the statute according to its terms. Id. We consider the "entire
 statute, including its subject matter, effects and consequences, as well as
 the reason and spirit of the law." In re Estate of Cote, 2004 VT 17, ¶
 10, 176 Vt. 293, 848 A.2d 264.
 
 ¶ 10. Although § 342 regulates the payment of wages, the term
 "wages" is not defined in that statute or in the surrounding ones. The
 term is defined, however, in other employment-related statutes in the same
 title. Thus, 21 V.S.A. § 1301(12), which governs unemployment
 compensation, defines wages as "all remuneration paid for services rendered
 by an individual, including commissions . . . ." The inclusion of
 commission payments within "wages" is consistent with the traditional use
 of the word. See Black's Law Dictionary 1610 (8th ed. 2004) ("Wages
 include every form of remuneration payable for a given period to an
 individual for personal services, including salaries, commissions, vacation
 pay, bonuses . . . ." (emphasis added)). Moreover, this Court has broadly
 defined wages in other contexts to include most forms of compensation for
 services rendered. Quinn v. Pate, 124 Vt. 121, 124, 197 A.2d 795, 797
 (1964) (stating that wages are synonymous with earnings and thus are
 compensation for labor).
 
 ¶ 11. In addition, most jurisdictions view commission payments as
 wages for purposes of wage-payment statutes. This is true of jurisdictions
 with statutes that define wages to include commission payments. See Ariz.
 Rev. Stat. Ann. § 23-350(5); Colo. Rev. Stat. § 8-4-101(8)(a)(II); Kan.
 Stat. Ann. § 44-313(c); Md. Code Ann., Lab. & Empl. § 3-501(c)(2); Minn.
 Stat. §§ 181.13(b), 181.145; Neb. Rev. Stat. § 48-1229(4). More
 importantly, it is true of states with statutes, like ours, that do not
 include a definition of wages. See Licocci v. Cardinal Assocs., Inc., 492
 N.E.2d 48, 55-56 (Ind. Ct. App. 1986) (noting inclusion of commissions as
 wages in other chapters of wage-and-hour statutes and citing state
 workmen's compensation statutes, state employment-security act, and Black's
 Law Dictionary for support that commissions are wages); Brown v. Navarre
 Chevrolet, Inc., 610 So. 2d 165, 169-71 (La. Ct. App. 1992) (collecting
 Louisiana cases defining commissions as wages and stating "[i]t is well
 settled that the term 'wages' includes commissions and courts have
 entertained actions for unpaid commissions under the statute"); Cmty.
 Telecomm. Corp. v. Loughran, 651 A.2d 373, 376 (Me. 1994) (holding that
 inclusion of commissions as wages under statute aligns with protective
 purpose of the act and "with authority from several other jurisdictions");
 see generally S. Samaro, The Case for Fiduciary Duty as a Restraint on
 Employer Opportunism under Sales Commission Agreements, 8 U. Pa. J. Lab. &
 Emp. L. 441, 447 (2006) (collecting cases and statutes, stating commissions
 are wages under most wage-payment statutes). 


 ¶ 12. If there is an argument to be made that commission payments
 were not intended to be wages under § 342, it lies in the requirements set
 forth by the statute. Section 342 requires an employer to pay wages to
 employees "each week . . . the wages earned by such employee to a day not
 more than six days prior to the date of such payment." 21 V.S.A. § 342(a). 
 On proper notice and consent of the employee, however, it allows an
 employer to pay "bi-weekly or semi-monthly . . . wages earned by the
 employee to a day not more than six days prior to the date of the payment." 
 Id. § 342(b). (FN4) Further, an employee who voluntarily leaves must be
 "paid on the last regular pay day, or if there is no regular pay day, on
 the following Friday." Id. § 342(c)(1). Defendant argues that commission
 payments cannot be governed by the statute "because [they] are not earned
 on a temporal basis" and thus cannot be paid according to the statute's
 requirements. We agree that there are serious questions about how the
 statute applies to the remuneration scheme used in this case. This does
 not mean, however, that the Legislature intended no protection for workers
 who are paid by commission. The coverage of the statute is broad, and it
 would clearly undermine the legislative intent if an employer could choose
 a method of payment that left no remedy if the employer failed to pay
 compensation in a timely fashion. Moreover, there is no difficulty in
 applying the statute in many situations where an employee is paid by
 commission - for example, to a retail-sales worker for whom the amount of
 commission can be determined as soon as a sale is made. Given the wording
 of our statute and the many decisions from other states construing the term
 "wages" in the context before us, we hold that commission payments are
 wages for purposes of our wages-and-medium-of-payment law. 

 II.

 ¶ 13. The next issue is whether defendant violated § 342. Here,
 plaintiff argues that defendant violated § 342(c)(1) by failing to pay him
 "on the last regular pay day." Defendant responds that it did not violate
 § 342(c)(1) because the last regular pay day did not occur until after suit
 was brought. (FN5) The superior court apparently agreed.
 
 ¶ 14. Initially, we note that this argument does not fit the facts. 
 This is not a case where plaintiff lost his right to receive his commission
 once he resigned. It is undisputed that plaintiff was entitled to a
 commission for long hauls made before he resigned, irrespective of when the
 calculation of the commission amount was made. Nor is this a case in which
 plaintiff relies solely on the untimeliness of a commission payment that
 was eventually made. In this case, defendant decided in January 2003,
 before plaintiff brought suit, that it had already overpaid him, and
 refused to pay more. Thus, this is a case of nonpayment, not late payment.

 ¶ 15. In making this point, we understand that the superior court
 held that on the day plaintiff brought suit, the unpaid commission amount
 was not due because defendant still had "to account for any potential
 claims against [plaintiff's] final shipment." The court found that the
 final accounting did not occur until several months later, and thus
 defendant had not violated the act when suit was brought. It found both
 that defendant did not violate § 342 and, in any event, was not liable for
 penalties under § 347.

 ¶ 16. We analyze the court's reasoning with respect to § 342 here
 and will address its § 347 reasoning below. Regarding § 342, we find the
 court's analysis flawed in a number of respects. By the date of suit,
 defendant had decided not to make any further commission payments, and the
 possibility of future damage claims was not the reason for the nonpayment. 
 Further, the court found that the amount of the claims-reserve account was
 $1000, and this was below the amount of the unpaid commission. (FN6) 
 Finally, as discussed below, a violation of § 342 is not necessarily
 limited to facts in existence at the time the suit is filed - here, for
 example, defendant continued to withhold any payment even after it was
 clear that there were no damage claims. 
 
 ¶ 17. The central point of the trial court's analysis was that
 "[defendant] did not owe [plaintiff] any of the remaining commission at the
 time he filed suit." That conclusion is plainly inconsistent with the
 court's finding that, other than withholding the damage reserve, defendant
 would pay the balance of the commission owed "about six weeks after a move
 was complete," when defendant had all the relevant information from
 plaintiff and Atlas. Over six weeks had expired before plaintiff brought
 suit, and it is undisputed that defendant had all the information from
 which to calculate the remaining commission. Indeed, defendant calculated
 the remaining commission, and its calculation was close to the amount the
 court eventually accepted. 

 ¶ 18. Apart from the above analysis, we decline to specify when the
 statute required defendant to pay the remaining commission. We recognize
 that defendant has an argument that the statute requires it to make
 commission payments only when it otherwise would have made them had
 plaintiff not resigned, and some other courts have accepted this argument
 in interpreting similar statutory language. See, e.g., J Squared, Inc. v.
 Herndon, 822 N.E.2d 633, 640 (Ind. Ct. App. 2005). Nevertheless, the
 statute is not entirely clear on this point, and we need not resolve the
 ambiguity here. Moreover, the situation in this case is exacerbated by
 both the absence of an agreement specifying how defendant would calculate
 and distribute plaintiff's commission, (FN7) and defendant's poor record
 keeping. In our view, defendant violated § 342(c) under any reasonably
 possible construction of its terms. It failed to pay any commission on
 plaintiff's final long-haul job, thereby risking that plaintiff would bring
 suit, and that the court would not agree with all of its offsets.

 III.
 
 ¶ 19. We turn then to the third question: whether plaintiff is
 entitled to penalties, along with costs and attorney's fees, under § 347
 due to defendant's violation of § 342. See 21 V.S.A. § 347 (providing
 penalties for violations of §§ 342, 343). The superior court found that §
 347 did not apply, apparently because of the last sentence of the section:
 "no action may be maintained under this section unless at the time the
 action is brought the wages remain unpaid or improperly paid." The court
 held that at the time plaintiff brought suit, no wages were unpaid or
 improperly paid.


 ¶ 20. We have addressed much of this analysis above under § 342. We
 here add two points relevant to applying the statutory language to this
 case. First, we construe the statute in light of the common law and
 consistent with its evident purpose. See Swett v. Haig's, Inc., 164 Vt. 1,
 5, 663 A.2d 930, 932 (1995) (stating that statute does not change common
 law rules unless "the intent to do so [is] . . . expressed in clear and
 unambiguous language"). Our general rule on damages is that "[t]he right
 of action being established, damages which have accrued are to be computed
 to the time of the trial, although accruing after the commencement of the
 action." Kerr & Elliott v. Green Mountain Ins. Co., 111 Vt. 502, 517, 18
 A.2d 164, 172 (1941). We believe that this rule is fully applicable here
 and is consistent with the statutory language. As the Supreme Judicial
 Court of Maine held in response to an argument that an employee must wait
 to sue until all commission payments are due under the wage-payment
 statute: "an employee who is a victim of ongoing violations need not wait
 until all possible violations have occurred to file a suit and obtain
 relief for all violations of a similar nature that do occur." Burke v.
 Port Result Realty Corp., 1999 ME 138, ¶ 18, 737 A.2d 1055. The purpose of
 § 347 is fulfilled if plaintiff has a claim that some wages remain unpaid
 at the time he brings suit. It is unreasonable and unnecessary to any
 purpose of the statute to require him to wait to bring suit until all
 possible damages have accrued.
 
 ¶ 21. Second, it is clear that plaintiff had a claim for his unpaid
 commission when he brought suit, a claim that was validated by the findings
 of the superior court that defendant owed plaintiff additional commission
 payments. As discussed above, there was no written employment agreement
 specifying how each commission was to be paid. In the absence of a written
 agreement, the superior court had to rely on extrinsic evidence to
 determine when plaintiff earned his commission. See Houben v. Telular
 Corp., 231 F.3d 1066, 1072 (7th Cir. 2000) (applying Illinois Wage Payment
 and Collection Act and stating that in the absence of a written agreement
 specifying how commission is earned and paid, the court must use extrinsic
 evidence to find the actual practices used). It found that the practice
 was to pay a commission, up to the amount of the claims reserve, about six
 weeks after the long haul was completed. Under that practice, defendant
 owed plaintiff his commission on the date plaintiff brought suit. See Lee
 v. Great Empire Broad., Inc., 794 P.2d 1032, 1034 (Colo. Ct. App. 1989)
 ("In such circumstances, the future payment must be made immediately upon
 becoming due or the employer becomes liable for the statutory penalty . . .
 ."). Thus, the action could be "maintained" under § 347 when plaintiff
 sued.

 ¶ 22. Beyond the specific issue of compliance with the language of §
 347, we note that decisions from other jurisdictions are clear that where a
 commission is earned before resignation and the employer does not pay the
 commission when it becomes due, the employer is liable for penalties. See
 id.; J Squared, 822 N.E.2d at 639-40; Admiral Mortgage, Inc. v. Cooper, 745
 A.2d 1026, 1029-30 (Md. 2000). Several state statutes, however, expressly
 recognize a "good faith" or "bona fide dispute" defense whereby an employer
 may avoid penalties if it can show that it withheld the payments because of
 a good-faith dispute. See Ariz. Rev. Stat. Ann. § 23-352(3); Colo. Rev.
 Stat. § 8-4-110(1); La. Rev. Stat. Ann. § 23:631, 632; Neb. Rev. Stat. §
 48-1232; N.H. Rev. Stat. Ann. § 275:44(IV). Vermont's wage-payment statute
 does not contain a good-faith exception, 21 V.S.A. §§ 342, 347, and we
 decline to infer one. State v. O'Neill, 165 Vt. 270, 275, 682 A.2d 943,
 946 (1996) ("It is inappropriate to read into a statute something which is
 not there unless it is necessary in order to make the statute effective."
 (citation omitted)); see also Burke, 1999 ME 138, ¶ 16 (declining to read
 bona fide dispute exception into statute).
 
 ¶ 23. Ultimately, defendant argues that it is not liable under §
 347 because Lanphear v. Tognelli, 157 Vt. 560, 601 A.2d 1384 (1991), holds
 that § 347 applies only to the nonpayment of wages and not to the
 underpayment of wages, which defendant asserts occurred here. Defendant
 misapprehends Lanphear. The Court in Lanphear held that an employee could
 not recover penalties under § 347 for an employer's failure to pay the
 minimum wage in accordance with 21 V.S.A. § 384. Id. at 563-64, 601 A.2d
 at 1386. Lanphear is distinguishable because our ruling as to the
 inapplicability of § 347 to the underpayment of wages applied only to a
 violation of the minimum wage statutes, §§ 381-396, and not to violations
 of the wage-and-medium-of-payment statutes, §§ 341-347. Id. at 563-64, 601
 A.2d at 1386 ("[T]he penalty provision applies only to violations of the
 timeliness and form of wage requirements, not the underpayment of wages."
 (emphasis added)); see also Longariello v. Windham Sw. Supervisory Union,
 165 Vt. 573, 575, 679 A.2d 337, 339 (1996) (mem.) ("Nothing in [Lanphear],
 a case holding that the remedies in § 347 are inapplicable for violations
 of minimum wage laws, suggests that § 347 cannot reach the adverse
 consequences of uncorrected payment delays." (emphasis added)). 

 ¶ 24. The plain language of § 347 covers any violation of § 342. 
 Since we have held that defendant violated § 342, § 347 necessarily
 applies.

 IV.
 
 ¶ 25. Finally, we address plaintiff's argument that he is entitled
 to treble damages, plus costs and attorney's fees, under § 347 because the
 statute awards an employee a penalty amount of twice the unpaid wages in
 addition to actual damages. Given its holding that plaintiff was not
 entitled to penalties at all, the superior court did not reach this issue. 
 This is a pure question of statutory construction that we, in any event,
 review de novo. In re South Burlington-Shelburne Highway Project, 174 Vt.
 604, 605, 817 A.2d 49, 51 (2002) (mem.). Because the issue is fully
 briefed, we address it here. 

 ¶ 26. Section 347 states that an employer who violates § 342 or §
 343 "shall forfeit to the individual injured twice the value thereof, to be
 recovered in a civil action, and all costs and reasonable attorney's fees." 
 21 V.S.A. § 347. The statute is clear that the amount awarded to an
 employee as a result of a civil action to recover wages is "twice the value
 thereof;" the statute is silent, however, as to whether this amount
 includes or is in addition to the employee's actual damages. Id. We
 conclude that the statutory language entitles the employee to double
 damages, or, put another way, actual damages plus a penalty amount equal to
 the actual damages. Vermont case law shows that this interpretation is
 consistent with previous application of the statute. See Lanphear, 157 Vt.
 at 563-64, 601 A.2d at 1386 (reversing on other grounds court's award of
 actual damages of $25.00 and § 347 penalties of an additional $25.00).
 
 ¶ 27. The statute providing for the investigation of unpaid-wage
 complaints by the Commissioner of the Department of Labor, 21 V.S.A. §
 342a, informs our review. This statute gives the Commissioner authority to
 "collect from the employer the [unpaid wages] and remit them to the
 employee." Id. § 342a(a). The Commissioner also has authority to collect
 penalties from an employer in "an additional amount not to exceed twice the
 amount of unpaid wages, one-half of which will be remitted to the employee
 and one-half of which shall be retained by the commissioner." Id. §
 342a(b) (emphasis added). Thus, when the Commissioner enforces the
 statutory scheme, the employee receives the actual damages in addition to a
 penalty amount equal to the actual damages, or double damages. We conclude
 that the Legislature did not intend that employees receive a higher penalty
 amount when suing on their own. See In re Margaret Susan P., 169 Vt. 252,
 262, 733 A.2d 38, 46 (1999) (interpreting statute as whole, "looking to the
 reason and spirit of the law and its consequences and effects to reach a
 fair and rational result"). Therefore, since § 347 is the only provision
 for an employee to collect actual damages in a civil action under the
 wage-payment statutes, the employee's penalty award must include the amount
 of actual damages. 

 ¶ 28. Our conclusion is reenforced by decisions in other
 jurisdictions interpreting wage-penalty statutes that do not specify
 whether actual damages are included in the penalty amount. See State v.
 Weller, 152 Vt. 8, 13, 563 A.2d 1318, 1321 (1989) ("Where there are similar
 statutes in other states, we look for guidance in the interpretations of
 those statutes."). Two jurisdictions have language that matches Vermont's,
 language which awards damages for "twice the amount" of the wages and does
 not specify whether the penalty amount is inclusive of the actual damages. 
 Conn. Gen. Stat. § 31-72 (employee may recover "in a civil action, twice
 the full amount of such wages"); Wash. Rev. Code § 49.52.070 (employer may
 be liable to the employee "for twice the amount of the wages unlawfully . .
 . withheld by way of exemplary damages"). Court decisions in these
 jurisdictions reveal that damage awards include the actual damages in the
 penalty award, resulting in double damages, not treble damages. See Butler
 v. Hartford Tech. Inst., 704 A.2d 222, 224, 230-31 (Conn. 1997) (affirming
 award of double damages under statute); Schilling v. Radio Holdings, Inc.,
 961 P.2d 371, 373, 376, 378 (Wash. 1998) (same). 
 
 ¶ 29. The same is true in states with statutes that award damages
 in the amount of three times the wages, yet fail to specify whether the
 penalty is in addition to, or inclusive of, the damages for unpaid wages. 
 See Sanborn v. Brooker & Wake Prop. Mgmt., 874 P.2d 982, 984, 988 (Ariz.
 Ct. App. 1994) (affirming award of $25,767.15, consisting of $8,589.05 in
 unpaid wages and $17,178.10 in penalties under statute allowing recovery of
 "an amount which is treble the amount of the unpaid wages"); Polk v.
 Larrabee, 17 P.3d 247, 251-52, 252 n.1, 259 (Idaho 2000) (affirming award
 of treble damages, i.e., award of $90,273.66, consisting of $30,091.22 in
 unpaid wages and $60,182.44 in penalties under statute allowing employee to
 recover "damages in the amount of three (3) times the unpaid wages found
 due and owing"); Stevenson v. Branch Banking and Trust Corp., 861 A.2d 735,
 757-59 (Md. Ct. Spec. App. 2004) (holding damages are capped at three, not
 four, times the amount of unpaid wages under statute stating that courts
 may "award the employee an amount not exceeding 3 times the wage"). These
 cases show that where a wage-payment statute does not specify whether a
 penalty is in addition to the amount of unpaid wages, courts typically
 interpret the penalty amount to include the unpaid wages.

 ¶ 30. Statutes in other jurisdictions illustrate that when a
 legislature intends to provide for wage-payment penalties in addition to
 actual damages, it does so explicitly. See, e.g., Me. Rev. Stat. Ann. tit.
 26 § 626-A (employee may recover "in addition to the unpaid wages . . .
 adjudged to be due, [interest], [costs and attorney's fees], and an
 additional amount equal to twice the amount of unpaid wages as liquidated
 damages." (emphasis added)). Maine's statute uses language similar to
 Vermont's in that it awards the employee "twice the amount" of the wages,
 but it also uses language specifying that the damages are "in addition to
 the unpaid wages." Id. Courts have predictably interpreted this to mean
 that the employee is entitled to, in effect, treble damages. See Burke,
 1999 ME 138, ¶¶ 7, 19 (affirming award of unpaid wages, penalty amount of
 twice unpaid wages, costs, and attorney's fees). 
 
 ¶ 31. These statutes also show the type of language generally
 employed by a legislature when the penalty award is not intended to include
 the amount of the unpaid wages. In fact, other Vermont statutes expressly
 specify when a penalty award is intended to be in addition to the actual
 damages. See 9 V.S.A. § 2461 ("Any consumer . . . may sue and recover . .
 . the amount of his damages . . . and exemplary damages not exceeding three
 times the value of the consideration given . . . ." (emphasis added)). 
 Moreover, a review of Vermont statutes reveals that when the Legislature
 wishes to grant treble damages, as plaintiff urges it did here, it does so
 explicitly. See 10 V.S.A. § 4709 (treble damages for importation and
 stocking of wild animals); 12 V.S.A. §§ 4920, 4923 (treble damages for
 trespass); 13 V.S.A. § 3606 (treble damages for "conversion of trees or
 defacing marks on logs"); 24 V.S.A. § 3307 (treble damages for interference
 with water supply); 25 V.S.A. § 207 (treble damages for stopping or
 conversion of floating lumber); cf. 21 V.S.A. § 347 (damages for "twice
 the value" of unpaid wages). 


 ¶ 32. Further, this Court has held that an award of treble damages
 as a penalty includes the amount of the original damages within the
 penalty. See State v. Singer, 2006 VT 46, ¶ 14, ___ Vt. ___, 904 A.2d 1184
 (holding proper statutory award of treble damages was three times the
 amount of actual damages). Thus, a penalty award three times the amount of
 actual damages - such as the one the plaintiff asks for here - is typically
 signaled by the term "treble damages" in the statute. 

 ¶ 33. In sum, we conclude that § 347 entitles an employee to double
 damages. We hold, therefore, that plaintiff is entitled to $5481.44 in
 damages, consisting of $2,740.72 in actual damages and a penalty in the
 same amount. We further conclude that plaintiff is entitled to attorney's
 fees and costs under the statute and remand so that the superior court may
 determine those amounts.

 Affirmed in part, reversed in part, and remanded for further
 proceedings consistent with the views expressed herein. 
 


 FOR THE COURT:

 
 _____________________________________
 Associate Justice



------------------------------------------------------------------------------
 Footnotes


FN1. Plaintiff directed defendant to pay $600 of the weekly advances to his
 partner, Donna Dowdy, because she reportedly assisted him on long-haul
 trips and because the arrangement would lower his child support obligation. 
 Ms. Dowdy was not a party to this action. The superior court ultimately
 determined that all wages - advances and commission payments - were 
 plaintiff's for purposes of the suit.

FN2. The trial court found that clients could make claims several months
 after a move was complete. Defendant maintains, as plaintiff confirmed in
 his deposition, that customers had up to nine months to submit damage
 claims.

FN3. Plaintiff prevailed on this issue below and argues here that we should
 affirm the superior court on this point. We address this issue because
 defendant argues that the ruling was wrong. Defendant can do so, despite
 failing to file a timely cross-appeal, because if we rule that commission
 payments are not wages, we would reach the same result as the superior
 court with respect to plaintiff's appeal issues, but on a different ground. 
 See Huddleston v. Univ. of Vt., 168 Vt. 249, 255-56, 719 A.2d 415, 419
 (1998) (explaining how a defendant's arguments could be properly raised on
 appeal despite its failure to file a cross appeal, because it was aggrieved
 by errors it alleged only in the event this Court reversed the trial
 court's judgment in defendant's favor).

FN4. Pursuant to a collective bargaining agreement, the payment may be made
 "to a day not more than 13 days prior to the date of payment." 21 V.S.A. §
 342(b).

FN5. Defendant's main position in the superior court, and in this Court, is
 that plaintiff cannot prevail under § 342 because the unpaid commission, if
 any, was owed to Ms. Dowdy, and not to him. See supra, note 1. The
 superior court originally ruled for defendant with respect to this point,
 holding that all but $280 was owed to Ms. Dowdy and not to plaintiff. 
 Thereafter, in response to plaintiff's motion to amend the judgment, the
 court reversed itself and awarded all damages to plaintiff. Defendant
 attempted to file a cross-appeal challenging the amendment of the judgment,
 but the cross-appeal was filed too late, and we dismissed it. As we stated
 in supra, note 3, defendant can urge a different ground of affirmance
 without a cross-appeal. It cannot, however, urge that we reduce
 plaintiff's recovery without a cross-appeal. As a result, we do not
 consider defendant's argument that the court erred in amending the
 judgment.

FN6. This was not true when the court rendered its original decision, but
 became true when it modified the recovery amount. Plaintiff sought
 reconsideration of the court's ruling that defendant had not violated §
 342, and was not liable under § 347, but the court denied the motion
 without explanation.

FN7. The only document representing an employment agreement was a letter
 submitted at trial which did not specify when commission payments were due;
 the only sentence pertaining to the issue is: "[defendant] also gave
 [plaintiff] the breakdown of how we pay drivers for interstate shipments."