Vermont Superior Court
Filed 06/04/24
Chittenden Unit

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street, PO Box 187
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-01917

---

**In Re: Corporate Dissolution of Koffee Kup Bakery, Inc.**

---

# ENTRY REGARDING MOTION

Title:      Motion Objecting to Claim Filed by Jean-Francois Morin (Motion: 39)
Filer:      Peter David Wolfson
Filed Date:   November 28, 2023

In this dissolution proceeding, the Receiver has filed a motion objecting to the Proof of Claim filed by Jean-Francois Morin, the former CEO of Koffee Kup Bakery, Inc. ("KKB"). The motion asserted that significant parts of that claim were barred by either the statute of limitations or waiver. Because the motion relied on factual assertions that were not matters of record, the court treated the motion as one for summary judgment and ordered submissions that complied with the requirements of V.R.C.P. 56(c). Now having reviewed those submissions, the court grants the motion in part and denies it in part.

## Background

The standards on a motion for summary judgment are familiar, and need not be repeated. Suffice it to say that applying those standards, the facts below emerge as undisputed, except as otherwise noted.

On October 30, 2018, Hubert Aubery, then KKB's Chairman, offered Mr. Morin employment as KKB's CEO, with an anticipated start date no later than December 3, 2018. DR Exh. 1. Mr. Morin accepted the offer on November 1, 2018. *Id.* The agreement provided for an annual base salary of $260,000, plus several bonuses. *Id.* First, the agreement promised "a signing bonus; $15,000 as a sign-on bonus, payable with your first paycheck." *Id.* It also promised that "[a]fter six months of employment, you are eligible for an additional $15,000 bonus." *Id.* Finally, the agreement stated: "You are eligible for an annual bonus which is targeted at 35% of base salary and linked to objectives defined annually. In the first year, KKB will guarantee 25% out of 35%. First year objectives will be defined by you and the Chairman." *Id.* It

remains disputed whether Mr. Morin and Mr. Aubery ever discussed objectives for the annual bonus.

The agreement also provided that in the event of termination without cause, Mr. Morin "will be provided a severance of six (6) months payable through regular payroll" as well as an additional month of severance up to a maximum of 12 months for each year of completed service after one year. *Id*. According to the agreement, the same severance would apply if the company was sold and Mr. Morin elected not to remain as CEO; "[t]his decision must be made within 90 days of the sale." *Id*.

On April 1, 2021, KK Bakery Investment Company LLC ("KKBIC") acquired KKB. On April 2, 2021, KKBIC, acting through Jeff Sands, notified Mr. Morin that he would no longer be KKB's CEO. In response, Mr. Morin stated, "As you are aware, I have an employment contract (see attached). As part of the employment agreement, I have made the choice not to remain under the new ownership and be eligible for severance." DR Exh 3. He further stated, "On my termination date, KKB will provide a seven months' severance (6 months plus one year [sic] for each year of completed service after one year through regular payroll." *Id.* On April 22, 2021, counsel for Mr. Morin demanded payment of the severance. This demand made no mention of unpaid bonuses.

On April 30, 2021, with the concurrence of KKB and its sister entities, one of KKB's secured creditors filed a stipulated application for appointment of a receiver. *Keybank Nat'l Ass'n v. Koffee Kup Bakery, Inc.*, No 21-CV-1064. The court granted that application on May 4, 2021. The order appointing the receiver enjoined "all persons who receive actual or constructive notice of this Order" from "prosecuting any new proceedings" involving KKB or its sister entities without first obtaining permission of the court. *Id.* On July 2, 2021, Mr. Morin attempted to intervene in that action to assert the claims at issue here. By entry dated July 15, 2021 but docketed four days later, the court denied that attempt, but allowed Mr. Morin to pursue his claims in a separate action. *Id.* On July 30, 2021, however, the court entered the order appointing a receiver in this proceeding, staying any pending proceedings and barring new collection actions against KKB. On January 14, 2022, Mr. Morin filed the claim now at issue.

<u>Analysis</u>

The Receiver first argues that the statute of limitations bars the signing and six-month bonus claims. Vermont law sets a two-year limitation on claims for failure to pay wages pursuant

Entry Regarding Motion
21-CV-01917 In Re: Corporate Dissolution of Koffee Kup Bakery, Inc.

Page **2** of **7**

to 21 V.S.A. § 342. 12 V.S.A. § 520. As our Supreme Court has noted, section 342 does not define wages. *Stowell v. Action Moving & Storage, Inc.*, 2007 VT 46, ¶ 10, 182 Vt. 98. Thus, the Court has looked to "other employment-related statutes in the same title"—specifically 21 V.S.A. § 1301(12). That provision defines wages as "all remuneration paid for services rendered by an individual, including commissions and bonuses." *Id.* Further, "this Court has broadly defined wages in other contexts to include most forms of compensation for services rendered." *Stowell*, 2007 VT 46, ¶ 10.

Mr. Morin contends that the signing bonus was simply a contractual term and therefore subject to the more general six-year limitation period. It is evident, however, that the signing bonus and the six-month bonus were both inextricably linked to his service for KKB. The court notes in this regard that the signing bonus did not become due upon signing, but was instead to be paid with Mr. Morin's first paycheck—in other words, after some however brief period of service; moreover, it required prorated reimbursement "[s]hould [he] leave within the first 90 days of employment." DR Exh. 1. Similarly, the six-month bonus was expressly conditioned on six months of service, and subject to proration "[s]hould [he] leave for any reason within the first year of employment." *Id.* The agreement set forth no criteria beyond service for entitlement to these bonuses. Thus, the inference that they were intended as compensation for services, and so subject to the two-year statute of limitations, is inescapable.[1]

Pursuant to the agreement, the signing bonus was payable with Mr. Morin's first paycheck. While the precise date of that payment does not appear, it is undisputed that Mr. Morin received it before the end of December 2018. DR Exhibit 5 at 8:17–24. Thus, the bonus was due and payable before the end of 2018. This means that to avoid operation of the statute of limitations, Mr. Morin had to have asserted his claim no later than sometime in December 2020. This he clearly did not do; he first asserted the claim in July of 2021 when he sought to intervene in the *Keybank* case. As no tolling provision operates to extend the limitations period, this claim is barred.

A different outcome obtains for the six-month bonus. Here, the Receiver's attack is two-pronged. She argues first that this bonus was not guaranteed, but rather remained at the

---

[1] This analysis may not apply to the annual bonus, which was to be "linked to objectives defined annually." Because the Receiver makes no statute of limitations arguments with respect to this bonus, however, the point is moot.

discretion of the employer. She then asserts that in any event, any claim for payment of this bonus is barred by the statute of limitations. Neither of these arguments withstands scrutiny.

On the first point, the Receiver makes much of the fact that the agreement states only that Mr. Morin would be "eligible" for the bonus "[a]fter six months of employment." She conveniently ignores the fact, alluded to above, that other than six months of service, the agreement includes no further conditions that must be met to receive this bonus. Rather, the agreement contains only one condition to the right to payment of the six-month bonus, and that was a condition subsequent: "Should you leave for any reason within the first year of employment, a pro-rated amount of the second $15,000 payment must be repaid to the Company." DR Exh. 1. Moreover, the assertion that KKB retained the unfettered discretion to pay or not pay any part of the six-month bonus would render the promise to pay illusory. Adopting the Receiver's construction would thus render the six-month bonus provision "mere surplusage." *See N. Sec. Ins. Co. v. Mitec Elecs., Ltd.*, 2008 VT 96, ¶ 24, 184 Vt. 303 (court strives to give effect to all material parts of contract and avoid readings that would render portions of contract "mere surplusage"). Particularly in light of the well-established principle that any ambiguities in a contract are construed against the drafter, *see, e.g., Trustees of Net Realty v. AVCO Fin. Servs.*, 147 Vt. 472, 475–76 (1986), the court concludes that the six-month bonus was not discretionary. Rather, it was due and payable, without further condition, upon the completion of six months of service.

The due date for payment of this bonus is less certain. The employment agreement specified merely that Mr. Morin was "eligible" for a second bonus "[a]fter six months of employment," but it was silent regarding the date by which that bonus was due. DR Exh. 1. The court need not wade in these murky waters, however. The absolute earliest that this payment could have been due was June 3, 2019—six months after Mr. Morin's start date. This would make June 3, 2021 the bar date under the statute of limitations. The reader will recall, however, that on May 4, 2021, with at least 30 days yet to run on the limitations period, the court enjoined the prosecution of any new proceedings against KKB. That action tolled the statute for the period of the injunction. 12 V.S.A. § 556. The court lifted that injunction, as applied to Mr. Morin, on July 19, 2021; the clock then began to run again. *Id.* Only 11 days later, the court enjoined any action against KKB, thereby again stopping the clock, with still 19 days left before the statute

ran. In short, under no conceivable construction of the due date for the six-month bonus does the statute of limitations preclude assertion of that claim.

With respect to the annual bonus, the Receiver does not rely on the statute of limitations, which clearly does not apply. Instead, she argues first that this bonus was not guaranteed, and if guaranteed, only at 8.75% of "base salary." The plain language of the agreement debunks each of these arguments.

On the first point, the Receiver observes that the annual bonus is "linked to objectives defined annually." The parties dispute whether Messrs. Morin and Aubery discussed objectives for the first annual bonus. This dispute is immaterial, however. The agreement goes on to provide, unequivocally, that "[i]n the first year," "25% out of 35%" is guaranteed. There is no ambiguity here; the first year's bonus is guaranteed. The only question is how much is guaranteed.

On this point, the Receiver argues that "25% out of 35%" means "25% of 35%," or 8.75%. Simply to state this argument is to defeat it. The Receiver's construction would read the word, "out," out of the agreement. This again would contravene the well-established principle that the court must "strive to give effect to every part of the instrument and form a harmonious whole from the parts." *State v. Philip Morris USA Inc.*, 2008 VT 11, ¶ 13, 183 Vt. 176 (quotation omitted); *see* 11 Williston on Contracts § 32:5 (4th ed.) ("To the extent possible, . . . every word, phrase or term of a contract must be given effect."). Leaving the word, "out," in, the meaning is clear: Mr. Morin was "eligible" for a bonus "targeted" at 35% and linked to defined objectives; in the first year, though, he was guaranteed not 25% of that target but 25% "out of" 35%. If "out" is to have any meaning, it must be that the calculation is not one, as the Receiver would have it, of multiplication, but instead of subtraction or segregation. In short, the agreement guaranteed Mr. Morin a bonus of at least 25% of his base salary at the end of his first full year of employment. The undisputed evidence is that Mr. Morin voluntarily reduced his base salary to $200,000 "sometime around July of 2019." DR Exh. 5, 18:9–12. Thus, on his one-year anniversary in December of that year, he was guaranteed a bonus of at least $50,000.

Finally, the Receiver argues that Mr. Morin waived his claims, not simply as to the three bonuses but also as to the severance package. In this regard, the material facts are at the very least disputed. By way of example only, the court notes that on the question of severance, the Receiver asserts that Mr. Morin indicated to Mr. Aubery in early April 2021 that he would not

Entry Regarding Motion
21-CV-01917 In Re: Corporate Dissolution of Koffee Kup Bakery, Inc.

Page **5** of **7**

receive severance. Of course, in early April 2021, KKB had been acquired, and Mr. Morin had been advised (not by Mr. Aubery) that his services as CEO were no longer needed; Mr. Morin promptly advised that he would not be continuing in any other role, and that he expected to be paid his severance package on his termination date. Soon thereafter, his attorney wrote to demand payment of the severance package. And in early July, Mr. Morin attempted to assert that claim in court.

"Waiver is the 'intentional relinquishment or abandonment of a known right.' " *West v. N. Branch Fire Dist. #1*, 2021 VT 44, ¶ 52, 215 Vt. 93 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "A party may 'waive virtually any right, constitutional or statutory, as long as the waiver is knowing, intelligent, and voluntary.' " *Id.* (quoting *State v. Hance*, 157 Vt. 222, 224 (1991)). Although the intention to waive a right may be implied, mere negligence is not sufficient; rather, implied waiver "must be evidenced by conduct of an unequivocal character." *Mears v. Farmers Co-op. Fire Ins. Co.*, 112 Vt. 519, 522 (1942). A mere delay "cannot be construed as a waiver of [a person's] rights because waiver is not created by mere oversight and cannot be inferred from silence." *Kanaan v. Kanaan*, 163 Vt. 402, 413–14 (1995).

The Receiver's evidence falls well short of meeting this standard. Indeed, the only evidence to which the Receiver alludes with respect to waiver of the bonuses is 1) Mr. Morin's continued performance of the agreement even after breaches occurred; 2) Mr. Morin's silence regarding the bonuses; and 3) Mr. Morin's failure to use his power as CEO to direct payment to himself. This conduct is far from unequivocal. Moreover, this conduct at best would support an implied waiver argument. As our Court has observed, however, "[t]here can be no implied waiver without detrimental reliance." *Waterbury Feed Co., LLC v. O'Neil*, 2006 VT 126, ¶ 12, 181 Vt. 535 (mem.). Here, there is no evidence of detrimental reliance. Thus, the court wonders, rather than summary judgment in favor of the Receiver, might Mr. Morin be entitled to summary judgment under V.R.C.P. 56(f)? Unless the Receiver has evidence beyond that disclosed in her motion papers, the tables here may well be turned.

## ORDER

The court grants the motion in part and denies it in part. Mr. Morin's claim for payment of the $15,000.00 signing bonus is precluded by the statute of limitations. His remaining claims remain; indeed, it may be he and not the Receiver who is entitled to judgment on those claims. Accordingly, pursuant to V.R.C.P. 56(f), the court orders the Receiver to show cause, within 14

days of this Order, why the court should not grant summary judgment in Mr. Morin's favor, establishing 1) his right to payment of the $15,000 six-month bonus, 2) his right to payment of the $50,000 first-year annual bonus, and 3) his right to payment of the full amount of the severance package. Mr. Morin shall have 14 days to respond to any such submission. There will be no right of reply; instead, the matter will then be under advisement.

Electronically signed pursuant to V.R.E.F. 9(d): 5/31/2024 4:03 PM

_____
Samuel Hoar, Jr.
Superior Court Judge