NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 18

No. 2017-142

| | |
|---|---|
| Negotiations Committee of Caledonia Central Supervisory Union | Supreme Court |
| | |
| v. | On Appeal from Superior Court, Caledonia Unit, Civil Division |
| | |
| Caledonia Central Education Association | October Term, 2017 |

Elizabeth D. Mann, J.

Pietro J. Lynn and Sean M. Toohey of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Plaintiff-Appellant.

Rebecca P. McBroom, Vermont – NEA, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **EATON, J.**   Negotiations Committee of Caledonia Central Supervisory Union (Committee) and Caledonia Central Education Association (Association) dispute whether collective bargaining negotiations between a school board negotiation committee and a teachers' association constitute "meetings" under the Open Meeting Law and, if so, whether those meetings may be held in executive session. The Caledonia Superior Court dismissed Committee's complaint seeking declaratory relief for lack of subject matter jurisdiction. We reverse the dismissal for lack of subject matter jurisdiction and hold that Vermont's Open Meeting Law does not apply to labor negotiations between a school district negotiating committee and a labor union.

¶ 2.    By way of background, the Caledonia Central Supervisory Union School Board created Committee to negotiate a new collective bargaining agreement with the local bargaining unit of CCSU's support staff, Association. Association is an affiliate of the Vermont chapter of the National Education Association, a national labor union. On November 14, 2016, Committee met with Association to engage in labor negotiations during a duly warned public meeting. The session was dedicated to negotiations over the ground rules that would govern future negotiations concerning employment of CCSU support staff. The meeting was held in open session, meaning open to the public. During the meeting, Committee and Association considered whether the ground rules should require that future substantive negotiations between the two should be held in executive session, a meeting from which the public is excluded.

¶ 3.    Generally, meetings of a public body subject to the Open Meeting Law are open to the public. 1 V.S.A. § 312(a)(1). As an exception to this general rule, Open Meeting Law provides procedures for entering executive session, a "session from which the public is excluded." 1 V.S.A. § 313(a). In relevant part, § 313(a)(1)(A) and (B) specify that "[a] public body may not hold an executive session except to consider . . . contracts [or] labor relations agreements with employees," and only "after making a specific finding that premature general public knowledge would clearly place the public body or a person involved at a substantial disadvantage." Id. § 313(a)(1)(A), (B). The public body has discretion over the parties and persons permitted to attend executive meetings. Id. § 313(b).

¶ 4.    Regarding the issue of whether their negotiations should continue in executive session, Committee and Association took divergent views. Association requested that negotiations concerning a new collective bargaining agreement, including compensation and benefits for support staff, be held in executive session. Association also stated that Committee's requirement that all future negotiation sessions regarding collective bargaining agreements be held in public constituted an unfair labor practice, and that Association would not engage in negotiations over

2

any topic unless Committee agreed to hold negotiations in executive session. After ten minutes of discussion in open session, Committee moved to caucus in executive session. Committee went into executive session, deliberated, then came out of executive session and announced that it did not see a basis to negotiate in executive session except when sensitive issues needed to be discussed.

¶ 5. Association took issue with Committee's decision for two reasons. First, Association contended Committee entered executive session without making a specific finding that premature public knowledge of the topic to be discussed—whether to hold future negotiations between Committee and Association in executive session—put either party at a substantial disadvantage, as required by the Open Meeting Law. 1 V.S.A. § 313(a)(1). Second, Association reiterated that Committee's unilateral decision that future bargaining occur in public constituted an unfair labor practice. Association declined to proceed with negotiations in open session, the meeting ended, and Association subsequently refused in writing to negotiate any subjects until Committee agreed to negotiate in executive session.

¶ 6. On December 8, 2016, Committee filed its complaint for declaratory relief in the Caledonia Superior Court seeking a declaration that, under the Open Meeting Law, Committee is required to hold its meetings in public absent a finding that premature public knowledge puts either party at a substantial disadvantage pursuant to 1 V.S.A. § 313(a)(1). In its answer on February 13, 2017, Association moved to dismiss the complaint for lack of subject matter jurisdiction and absence of a justiciable controversy. Association claimed the trial court did not have subject matter jurisdiction because the Vermont Municipal Labor Relations Act governs the parties' relations and the Vermont Labor Relations Board (VLRB) is the proper entity to resolve the issue.[1] On the

_____

[1] On February 21, 2017, Association filed an unfair labor practice complaint with the VLRB. The proceedings at the VLRB have no bearing on the trial court's decision, or our opinion here.

3

absence of justiciable controversy claim in the superior court, Association asserted that Committee refused to assess whether bargaining in public would put itself or a person (Association) at a substantial disadvantage prior to entering executive session, and therefore did not follow the statutorily prescribed procedure. Committee opposed the dismissal motion and moved for judgment on the pleadings, asserting that the trial court, not the VLRB, is the appropriate entity to resolve matters related to the Open Meeting Law and that the negotiations were required to be held in open session.

¶ 7. On April 10, 2017, the trial court issued a single-paragraph entry order granting Association's motion to dismiss for lack of subject matter jurisdiction. The decision referenced and adopted a previous decision issued by the Franklin Superior Court,[2] which presented a similar,

---

[2] Negotiations Comm. of Franklin Cent. Supervisory Union v. BFA St. Albans Educ. Ass'n, et al., 35-2-16 Frcv (Vt. Sup. Ct. Apr. 12, 2016). In Franklin, the Negotiations Committee of Franklin Central Supervisory Union and the St. Albans and Fairfield Education Associations, teachers' unions, met to discuss the "ground rules" for future negotiations. The meeting was held in open session, and the groups disputed "whether future sessions should be open to the public" under the Open Meeting Law. The Committee then brought an action seeking declaratory judgment as to "whether it is lawful to negotiate with the [A]ssociations in executive session"; the court found this action to be premature because the Committee was "unable, or unwilling" to engage in the analysis of whether either party was placed at a "substantial disadvantage" by public discussions, as required by the statute. The court stated:

> [T]he only violation that the [c]ourt can imagine would be self-inflicted, namely by way of the Committee resolving as a matter of fact that it cannot make the finding necessary to hold the negotiations in executive session, and then holding a meeting in executive session. The second event has certainly not occurred, and there is no record that the first event actually occurred.
>  . . . .
> Otherwise stated, the claim . . . is not ripe for judicial determination.

The court went on, in dicta, to suggest that if the Committee scheduled its next negotiation with the Associations and insisted on holding the meeting in open session by finding or failing to make a finding that it must do so under the Open Meeting Law, then the Association could refuse to attend and either party could petition the VLRB alleging an unfair labor practice. The court further suggested that "the proper remedy appears to lie with the Board, not the Court." The issue remains: whether these negotiations are "meetings" under the Open Meeting Law. We address that issue here.

but not identical, dispute. In dismissing the action for lack of subject matter jurisdiction, the court did not address Committee's motion for judgment on the pleadings. Committee timely appealed the trial court's decision, challenging the dismissal for lack of subject matter jurisdiction and squarely presenting the issue—whether negotiations between Committee and Association are "meetings" under the Open Meeting Law, and therefore subject to Open Meeting Law requirements. Committee does not suggest any material facts are in dispute to resolve this issue and seeks a remand with instructions to the trial court to enter judgment on the pleadings in its favor.

I. The Merits of This Case are Ripe for Review by This Court

¶ 8. We review the trial court's dismissal of Committee's complaint for declaratory judgment for lack of subject matter jurisdiction, as well as questions of statutory interpretation, de novo. See Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245, 30 A.3d 1263 ("Dismissal for lack of subject matter jurisdiction under Civil Rule 12(b)(1) is reviewed de novo . . . ."); Stowell v. Action Moving & Storage, Inc., 2007 VT 46, ¶ 9, 182 Vt. 98, 933 A.2d 1128 (applying de novo review to question of statutory interpretation).

¶ 9. The trial court incorrectly determined that it lacked subject matter jurisdiction over the matter at hand; contrary to the court's findings, it had jurisdiction to consider the parties' claims because: (1) the issue was ripe—the parties' positions and interests were concrete, clear, and adverse;[3] and (2) Committee's complaint for declaratory judgment squarely raised the issue of the applicability of the Open Meeting Law, which is within the purview of the court. See V.R.C.P. 57

_____

[3] The issue here was ripe for determination when Committee decided not to negotiate in executive session and Association refused to attend future negotiations, effectively halting negotiations, if not sooner. "Claims are ripe when there is a sufficiently concrete case or controversy," as opposed to one that is abstract or "purely hypothetical." State v. M.W., 2012 VT 66, ¶¶ 11-12, 192 Vt. 198, 57 A.3d 696 (quotation omitted). By the time Committee decided not to enter executive session and labor negotiations ceased, the controversy in this case was more than sufficiently concrete to support a declaratory judgment action.

(implementing statutory declaratory judgment procedure); 12 V.S.A. § 4711 (outlining scope of declaratory judgment). "The purpose of a declaratory judgment is to provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy." Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 319 (1991) (quotation omitted). Without the presence of an actual or justiciable controversy, "a declaratory judgment is merely an advisory opinion which [the court] lack[s] the constitutional authority to render." Id. Therefore, declaratory relief is only available "when a party is suffering from the threat of actual injury to a protected legal interest." Id. (quotation omitted).

¶ 10. When reviewing dismissal for lack of subject matter jurisdiction, we "tak[e] all uncontroverted factual allegations of the complaint as true and constru[e] them in the light most favorable to the nonmoving party." Travelers Indem. Co. v. Wallis, 2003 VT 103, ¶ 7, 176 Vt. 167, 845 A.2d 316. The civil division, including the superior court here, is Vermont's court of general jurisdiction. 4 V.S.A. § 31(1). Thus, the court presumptively has jurisdiction over the declaratory judgment action here, pursuant to 12 V.S.A. § 4711. Association implies there is a statutory exception to the court's authority—or that the court should abstain from asserting its general subject matter jurisdiction—when the subject of the issue at hand is within the scope of the VLRB's statutory authority. While the Legislature has specifically authorized the VLRB to adjudicate certain claims, such as unfair labor practice claims, the labor laws do not broadly provide that all matters relating to labor relations are solely within the purview of the VLRB. 21 V.S.A. § 1727. This is not to say the VLRB may not properly consider the Open Meeting Law in its decision-making process. There may be many instances when the VLRB is called upon to consider the Open Meeting Law in the context of a labor dispute. However, the Open Meeting Law also has potential application in numerous circumstances not involving labor relations, which remain within the court's jurisdiction; such is the case here.

6

¶ 11. Here, the court was the appropriate body to address Committee's claim for declaratory judgment because the question at hand—a legal question posed by parties facing the threat of actual injury to a protected legal interest—is not excepted from the court's general jurisdiction and is encompassed within the declaratory judgment provisions.[4] Because the matter is ripe and because the Court has subject matter jurisdiction over the claim for declaratory judgment seeking interpretation of the Open Meeting Law, the lower court erred in granting the motion to dismiss.

¶ 12. Ordinarily, the determination that a motion to dismiss was improperly granted would result in a remand for consideration of the merits of the claim. However, Committee has filed a motion for judgment on the pleadings and Association has filed nothing indicating any disputed issues of fact or matters outside the pleadings necessary for determination of the central question—whether the Open Meeting Law applies to labor negotiations between a school district and its teachers. Committee, in particular, has briefed this issue and argued on appeal that this Court should decide that the Open Meeting Law applies to these negotiations. Because this issue presents purely a question of law, which we review de novo, it serves no purpose to remand the matter for determination by the trial court only to have the court's holding appealed again. See Towns v. Northern Sec. Ins. Co., 2008 VT 98, ¶ 16 n.4, 184 Vt. 322, 964 A.2d 1150 (finding it appropriate for Court to address issue not decided by trial court when issue was raised below and was "fully briefed on appeal," and doing so served the "interest of judicial economy"); Cardiff v.

---

[4] Moreover, the superior court has express authority to oversee violations of the Open Meeting Law provisions. Specifically, 1 V.S.A. § 314(c) provides a path for aggrieved parties to bring "action in the Civil Division of the Superior Court in the county in which the violation has taken place for appropriate injunctive relief or for a declaratory judgment." 1 V.S.A. § 314(c). In this case, Committee alleges that collective bargaining negotiations are "meetings" under the Open Meeting Law and that failure to reestablish negotiations in open session constitutes a violation of the Open Meeting Law. We have jurisdiction to consider whether such a violation occurred and, if so, to enforce the Open Meeting Law under 1 V.S.A. § 314(c).

Ellinwood, 2007 VT 88, ¶ 12, 182 Vt. 602, 938 A.2d 1226 (mem.) (reaching issue not decided by trial court in interest of judicial economy). Accordingly, we reach the issue of whether labor negotiations of this type are subject to the Open Meeting Law in this appeal.

## II. Collective Bargaining Negotiations Between Committee and Association Are Not "Meetings" Under the Open Meeting Law

¶ 13. We now turn to the central issue: Whether contract-bargaining negotiations between Committee and Association are "meetings" under the Open Meeting Law, 1 V.S.A. § 310(2).[5] We conclude they are not. In reaching this conclusion, we find the Open Meeting Law to be ambiguous as to whether labor negotiations are "meetings" under the law. In resolving this ambiguity, we consider the plain language of § 310(2) and the interplay of three legislative enactments—the Vermont Open Meeting Law, 1 V.S.A. §§ 310-314; the Public Records Act, 1 V.S.A. §§ 315-320; and the Labor Relations for Teachers and Administrators Act, 16 V.S.A. §§ 1981-2028—as well as customary practice in the Vermont public sector and the Court's ruling in Blum v. Friedman, 172 Vt. 622, 782 A.2d 1204 (2001) (mem.).[6]

---

[5] Because one party to the negotiations, Committee, is a "public body," the Open Meeting Law will apply if the negotiations are "meetings" under 1 V.S.A. § 310(2). Here, Committee is a "public body" within the plain meaning of the Open Meeting Law. 1 V.S.A. § 310(3); see Valley Realty & Dev., Inc. v. Town of Hartford, 165 Vt. 463, 466, 685 A.2d 292, 294 (1996) ("If the statute is unambiguous, we first look to the plain, ordinary meaning of the language."). Section 310(3) of the Open Meeting Law states that " '[p]ublic body' means . . . any board[ or] council . . . of any . . . instrumentality of the State or one of more of its political subdivisions, or any committee of any of the foregoing boards, [or] councils." 1 V.S.A. § 310(3) (emphasis added). In Vermont, school boards are public bodies under this definition. See 16 V.S.A. § 1981(3) (" 'School board' means the board of school directors of a school district or its equivalent in any independent elementary or secondary school."); id. § 1981(4) (" 'School district' means any public school district or any independent elementary or secondary school within the State that directly or indirectly receives support from public funds."). Committee, as a "school board negotiations council," similarly meets this definition. Because Committee is a public body, Committee "meetings" are subject to the Open Meeting Law.

[6] The VLRB has similarly interpreted the term "meeting" pursuant to 1 V.S.A. § 310(2) of the Open Meeting Law utilizing tools of statutory construction. Washington Ne. Supervisory Union v. Cabot Teachers' Ass'n & Twinfield Teachers' Ass'n, 34 VLRB 4 (May 2, 2017), http://vlrb.vermont.gov/decisions/download [https://perma.cc/678X-2AJT]. Here, we address

¶ 14. We apply traditional rules of statutory construction to determine the scope of the term "meeting" pursuant to 1 V.S.A. § 310(2) of the Open Meeting Law. See, e.g., <u>Valley Realty & Dev., Inc.</u>, 165 Vt. at 466, 685 A.2d at 294 (applying traditional canons of statutory construction to interpret 1 V.S.A. § 314 remedy provision of Open Meeting Law and give effect to legislative intent); <u>Trombley v. Bellows Falls Union High Sch. Dist. No. 27</u>, 160 Vt. 101, 106, 624 A.2d 857, 861 (1993) (interpreting Public Records Act using traditional canons of statutory construction, a "similar [approach] to that for open meeting law cases"). Our goal is to effectuate the Legislature's intent. <u>Stowell</u>, 2007 VT 46, ¶ 9. To do so, we first look to the plain language of the statute and, if the meaning is clear, enforce the statute according to its terms. <u>Id</u>. If the language is ambiguous, as we find it to be here, we seek to determine Legislative intent by "consider[ing] the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." <u>Id</u>. (quotation omitted). "Provisions that are part of the same statutory scheme must be read in context and the entire statutory scheme read" together to ascertain the legislative intention from the whole of the enactments. <u>In re Grievance of Danforth</u>, 174 Vt. 231, 238, 812 A.2d 845, 851 (2002); see also <u>Rutland Herald v. City of Rutland</u>, 2012 VT 26, ¶ 24, 191 Vt. 387, 48 A.3d 568 (stating legislative intent is derived from consideration, not only of particular statutory language, but also from entire enactment, its reason, purpose, and consequences).

---

Committee's complaint for declaratory judgment regarding the scope of the Open Meeting Law provisions, thus we do not owe deference to the VLRB's holding in <u>Cabot</u>. As noted above, <u>supra</u>, ¶ 10, while there may be instances when the VLRB considers the Open Meeting Law in the context of a labor dispute, the Open Meeting Law has the potential for application in numerous circumstances not involving labor relations. Thus, we would not afford deference to the VLRB's interpretation of the statute when the underlying claim does not lie within the VLRB's particular area of expertise, as is the case here. Compare 21 V.S.A. § 1727(a) (outlining statutory scope of VLRB's area of expertise as "[t]he Board may prevent any person from engaging in any unfair labor practice"), with <u>Rodriguez v. Pallito</u>, 2014 VT 18, ¶ 18, 195 Vt. 612, 93 A.3d 102 (applying de novo review when proceedings before Board invoked questions beyond its expertise), <u>Vt. St. Emps. Ass'n v. State</u>, 2009 VT 21, ¶ 19, 185 Vt. 363, 971 A.2d 641 (explaining that Court only owes "substantial deference to the board in decisions that lie within its area of expertise").

¶ 15. The plain language of the Open Meeting Law is ambiguous as to whether "meetings" include collective bargaining negotiations between Committee and Association because the law lacks clarity on whether a gathering for the specific purpose of engaging in labor negotiations falls within the statutory definition of a "meeting." The Open Meeting Law defines "meeting" as "a gathering of a quorum of the members of a public body for the purpose of <u>discussing the business of the public body</u> . . . or for the purpose of taking action." 1 V.S.A. § 310(2) (emphasis added). The Legislature elected to define "meetings" in the context of the Open Meeting Law, understanding that gatherings of a public body differ from meetings between individuals or private entities because public bodies are accountable to the general public. 1 V.S.A. § 311(a) ("[T]he legislature finds and declares that public commissions, boards, and councils and other public agencies in this State <u>exist to aid in the conduct of the people's business</u> and <u>are accountable to them</u> . . . ." (emphases added)). Yet, looking at § 310(2) in isolation, the Legislature made no mention of negotiations and gave no instruction as to whether it intended negotiation sessions between a school-board-designated committee and a teachers' association to be "meetings."

¶ 16. Despite this lack of clarity, the language of 1 V.S.A. § 310(2) suggests the negotiations here are not "meetings" because (1) the Legislature chose not to include "negotiations" in the definition, and (2) the statutory language implies "meetings" are intended for unilateral Committee action, not bilateral negotiations. First, 1 V.S.A. § 310(2) defines a "meeting" as a gathering for the purpose of "discussing"; the Legislature did not include meetings for the purpose of "negotiating" in the definition. The Legislature has distinguished the same terms at issue here—"meeting," "discussing," and "negotiating"—in other statutory provisions,[7]

---

[7] The Labor Relations for Teachers and Administrators Act, states that "[p]rofessional negotiations" can encompass a variety of interactions, including "<u>meeting</u>, conferring, consulting, <u>discussing</u> and <u>negotiating</u>." 16 V.S.A. § 1981(2) (emphases added).

suggesting that those terms are distinct, <u>Trombley</u>, 160 Vt. at 104, 624 A.2d at 860 (1993) (explaining this Court will not construe language "in a way that renders a significant part of it pure surplusage"), and that the Legislature will intentionally reference negotiations in statutory language when necessary. <u>Id</u>. (quotation omitted). It conspicuously failed to reference "negotiations" when defining "meeting" under § 310(2), indicating "meeting" and "negotiating" are not interchangeable terms for the purposes of collective bargaining between Committee and Association.

¶ 17.    Second, a public body gathering for the purpose of "discussing the business of the public body," 1 V.S.A. § 310(2), implies unilateral committee action—a committee gathering to manage its own affairs. In the context of collective bargaining negotiations, this could include preparing for negotiations, soliciting public comment on negotiations, developing bargaining proposals, and discussing negotiation strategy. Those gatherings of the public body would be "meetings" subject to the Open Meeting Law and generally open to the public; the public body would be able to move into executive session upon making the necessary finding of a substantial disadvantage to the public body or person involved. 1 V.S.A. § 313(a)(1). In contrast, gathering for the purpose of "negotiating" a bilateral agreement between a public body and an independent and equal bargaining partner requires joint participation in the proceedings by both the members of the public body and the members of the bargaining partner. See, e.g., <u>Saratoga Cty v. Newman</u>, 476 N.Y.S.2d 1020, 1022 (Sup. Ct. 1984) ("[T]here is sufficient evidence that a collective bargaining session involves much more than just a meeting of a committee of a public body since it is absolutely necessary for negotiators for the employees' representatives to participate in the meeting."). A public body meeting to discuss its own business is different from bilateral negotiations because a "meeting" under § 310(2) does not necessitate another party's involvement and contribution. The absence of any indication in the Open Meeting Law that bilateral labor

11

negotiations were intended to be "meetings" under the Open Meeting Law creates an ambiguity that we must resolve.

¶ 18.  When the plain language of the statute is ambiguous, we look to the entire statutory scheme to determine legislative intent.  In re Grievance of Danforth, 174 Vt. at 238, 812 A.2d at 851.  First, we examine other provisions of the Open Meeting Law to aid us in defining "meeting." The Open Meeting Law is entitled to a "liberal construction," and exemptions to the Open Meeting Law must be strictly construed.  See Trombley, 160 Vt. at 104, 624 A.2d at 860 (referencing other jurisdictions where similar provisions are entitled to liberal construction).  Here, the Open Meeting Law does not specifically reference collective bargaining negotiations between a school board committee and a teachers' association, but reading the provisions in context supports the interpretation that these negotiations are not "meetings."

¶ 19.  Generally, the Open Meeting Law requires that public body meetings remain open to the public.  1 V.S.A. § 312(a)(1) ("All meetings of a public body are declared to be open to the public at all times, except as provided in section 313 of this title.").  There are several exceptions to this principle.  See 1 V.S.A. § 313(a)(1)(A)-(F) (listing exemptions to general open meeting provisions under 1 V.S.A. § 312(a)).  Relevant here, section 313(a)(1)(A) and (B) provide that a public body may hold an executive session at a meeting covered by the Open Meeting Law to consider "contracts" and "labor relations agreements with employees," but only after "making a specific finding that premature general public knowledge [of the matter] would clearly place the public body or a person involved at a substantial disadvantage."  Id. § 313(a)(1)(A)-(B).[8]  Section

---

[8]  In 2014, the Legislature amended the Open Meeting Law, 1 V.S.A. § 313(a)(1), to clarify when a meeting could be held in executive session. The criteria for determining when executive session is appropriate changed from "where premature general public knowledge would clearly place the public body or a person involved at a substantial disadvantage," to "after making a specific finding that premature general public knowledge would clearly place the public body or a person involved at a substantial disadvantage."  2013, No. 143 (Adj. Sess.), § 313(a)(1).  This change does not involve the definition of "meeting" under the Open Meeting Law, and therefore does not impact our analysis regarding whether a negotiation is a "meeting" here.

12

313(b) further states: "Attendance in executive session shall be limited to members of the public body, and, <u>in the discretion of the public body</u>, . . . persons who are subjects of the discussion or whose information is needed." <u>Id</u>. § 313(b) (emphasis added).

¶ 20.    There are at least two issues with incorporating the negotiations at hand into the term "meetings" under these Open Meeting Law provisions.  First, construing § 313 strictly, because negotiations between a school board committee and teachers' association are not expressly listed in the Open Meeting Law exemptions, if these negotiations are meetings, all such sessions would be required to occur in public pursuant to § 312(a), absent the required finding of substantial disadvantage in § 313(a)(1).  Considering the sensitive nature of certain negotiation topics—such as references to individual employees or private information regarding specific personnel—we find it unlikely the Legislature chose not to provide a mechanism for a committee and a teacher's association to negotiate privately in these instances, indicating negotiations are not "meetings."[9] On the other hand, it would have been a simple enough matter to have specifically included "negotiations" within the definition of "meetings" if that is what the Legislature intended.

¶ 21.    Second, labor negotiations require joint participation from parties in equal bargaining positions.  See e.g. <u>Saratoga Cty.</u>, 476 N.Y.S.2d at 1022 (discussing importance of joint participation in collective bargaining agreements); 16 V.S.A. § 2001 (requiring "negotiations

---

[9]  In § 313(a)(2), the Legislature included language to exclude certain types of negotiations from the Open Meeting Law's general provisions.  While § 313(a)(1)(A) and (B) enable a public body to enter executive session to "consider"—not negotiate—"contracts" and "labor relations agreements" when one party would be put at a substantial disadvantage, § 313(a)(2) allows a public body to enter executive session to consider "negotiating or securing" real estate purchase or lease options.  If the Legislature envisioned the Open Meeting Law applying to collective bargaining negotiations between an employer and an association, it likely would have included language, like it did in § 313(a)(2), to enable the parties to negotiate in executive session under certain situations other than when the public body makes a unilateral finding that one party would be placed at a substantial disadvantage.  The absence of such language suggests that the Legislature did not intend negotiation sessions to be treated as "meetings" under the Open Meeting Law in the first instance.

councils of the school board" and "recognized teachers' . . . organization" to "meet together at reasonable times, and upon request of either party" to negotiate in good faith); 16 V.S.A. § 2007 (delegating authority to "either party" to request unresolved issues be submitted to factfinding committee). If negotiations are construed as "meetings" under § 310(2), then § 313(a)(1) unquestionably assigns unilateral authority to Committee to determine when executive sessions occur and who may attend, upending the intended parity of bilateral negotiations contemplated in 16 V.S.A. §§ 2001 and 2007. 1 V.S.A. § 313(a)(1) (explaining that public body can "consider . . . labor relations agreements with employees" during executive session when public body finds one party would be put at substantial disadvantage). This would give Committee unilateral discretion to determine whether either party is placed at a substantial disadvantage, 1 V.S.A. § 313(a)(1), and to limit executive session attendees, id. § 313(b). There is no evidence the Legislature intended to grant Committee full authority to decide in the first instance whether and when bargaining is to take place in executive session, and, in that event, who may attend on behalf of a teachers' association—a construction that potentially impacts party dynamics in the collective bargaining process.[10]

¶ 22. The Legislature omitted any reference to "negotiations" from the Open Meeting Law provisions, §§ 310-14; there is no evidence it intended to mandate that collective bargaining negotiations between Committee and Association occur in public, or to allow Committee unilateral exercise of the executive session function during these sessions. The absence of such legislative instruction supports the conclusion that these negotiations are not "meetings" under 1 V.S.A. § 310(2).

---

[10] Our resolution of the ambiguity in the Open Meeting Law does not turn on whether one side or the other may ultimately be benefitted from negotiating in open session. We recognize that even under the Committee's reading of the statute, it would be required not to engage in unfair labor practices. Nonetheless, for the reasons noted above, the Committee's construction of the Open Meeting Law would shift the balance between school board committees and teachers' associations.

¶ 23.   Further support for the position that negotiations are not meetings can be found in parallel statutes that complement the Open Meeting Law: the Public Records Act and the Labor Relations for Teachers and Administrators Act.  Harmonizing the Open Meeting Law with these provisions demonstrates that, while the Legislature intended to encourage accountability on the part of public bodies, negotiation sessions between school board committees and teachers' associations were not anticipated as "meetings" under the Open Meeting Law.  Hartford Bd. of Libr. Tr. v. Town of Hartford, 174 Vt. 598, 599, 816 A.2d 512, 515 (2002) (mem.) ("When interpreting independent statutory schemes with overlapping subject matters, we prefer to first look for a construction that will harmonize the seemingly-inconsistent statutes." (quotation omitted)).

¶ 24.   The Public Records Act was enacted to "provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution."  1 V.S.A. § 315(a).  The Act safeguards public access to public documents and records; exceptions to this policy are strictly construed.  Trombley, 160 Vt. at 106-07, 624 A.2d at 860.  Section 317(c) of the Public Records Act specifies exceptions to the Act and identifies public records that are exempt from "public inspection and copying."  Id. § 317(c).  Relevant to this discussion, "[r]ecords relating specifically to negotiation of contracts including collective bargaining agreements with public employees," are exempt from such disclosure.  Id. § 317(c)(15).  Thus, even under a strict construction, the Legislature sought to afford special protection for records related to collective bargaining negotiations between public agencies and public employees.

¶ 25.   Here, a public body, Committee, is engaging in collective bargaining negotiations with an association of public employees, Association.  Records of these negotiations would be inaccessible for public review under section 317(c)(15). Because the Legislature protected records of these negotiations from public access under the Public Records Act, opening these same sessions to the public as "meetings" under the Open Meeting Law directly contradicts this

Legislative scheme. It would make little sense that a written record, such as minutes of a negotiating session, is exempt from public disclosure but the meeting itself is open to the public. Exempting collective bargaining negotiations from the scope of "meetings" under the Open Meeting Law brings harmony to these provisions, and offers a more consistent interpretation of the Legislature's intent. Hartford Bd. of Libr. Tr., 174 Vt. at 599, 816 A.2d at 515. Thus, the Public Records Act further supports the conclusion that labor negotiations between a public body and its employees are not "meetings" under the Open Meeting Law.[11]

¶ 26. Provisions within the Labor Relations for Teachers and Administrators Act also support an interpretation that labor negotiations between Committee and Association are not "meetings." Section 2001 of the Labor Relations for Teacher and Administrators Act states: "The negotiations councils of the school board and of the recognized teachers' or administrators' organization shall meet together at reasonable times, upon request of either party, and shall negotiate in good faith on all matters properly before them under the provisions of this chapter." 16 V.S.A. § 2001. This language establishes that teachers' associations are an indispensable party to collective bargaining negotiations with the school board negotiations committee. Section 2009 further provides: "The negotiations councils for school boards and for teachers' and administrators' organizations are empowered to delegate in whole or in part the responsibility for negotiation of the collective agreement to any persons they may choose." Id. § 2009. Thus, under

---

[11] Association contends that, under the Public Records Act, parties to a public meeting can consider documents to which the Act's exemptions may ultimately attach without public disclosure because exemptions under the Public Records Act are separate from the Open Meeting Law provisions. 232511 Investments, Ltd. v. Town of Stowe Dev. Review Bd., 2005 VT 59, ¶¶ 4-5, 178 Vt. 590, 878 A.2d 282 (mem.). Under Association's reconciliation of these provisions, negotiation proposals would only lose protection under the Act once they were exchanged between the parties in the context of negotiations. While this reading of the Act might also "harmonize" the Open Meeting Law and the Public Records Act, we cannot assume the Legislature intended such a construction absent additional statutory language in the Public Records Act exemption provisions.

the Act, Association is empowered to delegate bargaining power to a "person" of its choosing.[12] Yet, under the Open Meeting Law, Committee has unilateral discretion to determine whether an executive session occurs and who may attend; Committee has the authority, further, to exclude any party or person of its choosing during executive session. 1 V.S.A. § 313(a)(1), (b). These competing powers can only coexist with the consent of the public body; an invitation it can withdraw at any time. We find it implausible that the Legislature intended these express protections in the Labor Relations for Teachers and Administrators Act provisions to ring hollow in the context of collective bargaining negotiations between a school board committee and teachers' association.

¶ 27. Finally, 16 V.S.A. § 2007(a) provides that if there is a continuing disagreement between the school board committee and the teachers' association following negotiations, then "either party may, after negotiation, . . . request that . . . unresolved issues be submitted to a fact-finding committee." 16 V.S.A. § 2007(a). The fact-finding committee then issues a report, which "shall be made public . . . if the issues in dispute have not been resolved within ten days of the delivery of the report." 16 V.S.A. § 2007(d). This language implies that negotiations between the school board committee and the teachers' association are private; issues within the negotiations only become public if the parties cannot reach a resolution within ten days of delivery of the factfinder's report. Given this emphasis on confidentiality, even at the close of negotiations, it is reasonable to assume the Legislature intended this protection to extend to earlier phases of negotiation—when the terms are much less developed, and the parties may be further apart in their negotiations and becoming familiar with sensitive issues. The ten-days-to-disclosure window makes little sense if the earlier aspects of negotiation have been conducted in public. In contrast,

---

[12] The parties dispute, and we do not determine, whether construing collective bargaining negotiations as "meetings" enable a public body to avoid the Open Meeting Law by delegating its responsibility for negotiation of the agreement to a private person or entity, pursuant to § 2009.

17

"meetings" under the Open Meeting Law are open to the public unless premature general public knowledge would place one of the parties or persons involved at a "substantial disadvantage." 1 V.S.A. § 313(a)(1). Considering legislative direction that negotiations at the factfinding stage should be kept private under 16 V.S.A. § 2007, we cannot find that the Legislature also intended negotiation sessions earlier in the process to be "meetings" open to the public under the Open Meeting Law.

¶ 28. In summary, reading the Open Meeting Law, the Public Records Act, and the Labor Relations for Teachers and Administrators Act in concert shows: (1) the act of "negotiating" is distinct from "meeting" or "discussing"; (2) the Legislature intended negotiation sessions between school board committees and teachers' associations to be conducted on a level playing field—an intent that is incompatible with the unilateral authority and responsibility Committee's construction of the Open Meeting Law would vest in Committee; and (3) the Legislature did not intend to compel public airing of ongoing collective bargaining negotiations.[13] In the absence of clear statutory expression, we apply a construction of the Open Meeting Law that also aligns with the statutory scheme created by the Legislature through the Public Records Act and the Labor Relations for Teachers and Administrators Act by finding that "negotiations" between Committee and Association are not "meetings" under the Open Meetings Law.

¶ 29. Lastly, our conclusion, based on the statutory analysis outlined above, is further strengthened by (1) the customary practice between school board committees and teachers' associations to hold negotiation sessions in private, and (2) this Court's past caselaw.

¶ 30. First, it is not disputed that Vermont school board councils and teachers' associations have, until recently, conducted labor negotiations in private, indicating that neither

---

[13] We emphasize that nothing in our decision should be construed to preclude parties from agreeing to conduct negotiations in public, subject to whatever exceptions they may mutually adopt. We hold only that the Open Meeting Law does not apply to negotiation sessions.

18

side felt these negotiations were "meetings" under the Open Meeting Law. We are hard-pressed to believe that the experienced lawyers engaged in labor negotiations of this type overlooked this issue until recently. In cases where the parties have "a long-standing practical construction" of a statute they are affected by, that understanding "should be given considerable interpretative weight." See Saratoga Cty., 476 N.Y.S.2d at 1022 (holding public employers' and employee organizations' "long-standing practice" that negotiating sessions were not covered by Open Meetings Law should be given "considerable interpretive weight").

¶ 31. The VLRB has long recognized that it is "accepted practice" within the public sector that negotiations are conducted in private. See U.E. Local 267 v. Univ. of Vt., 21 VLRB 106, 109 (1998), http://vlrb.vermont.gov/decisions/download [https://perma.cc/678X-2AJT] (stating it is "accepted practice in the Vermont public sector" that negotiations are "conducted in private"); Sw. Vt. Edu. Ass'n, Vt. NEA v. Shaftsbury Town Bd. of Sch. Dirs. v., 10 VLRB 124, 138-39 (1987) http://vlrb.vermont.gov/decisions/download [https://perma.cc/678X-2AJT] (finding association failed to bargain in good faith when it unilaterally publicized press release regarding negotiations contrary to prior agreement, constituting unfair practice violation). Meetings under the Open Meeting Law occur in public, absent an applicable exemption under 1 V.S.A. § 313. Construing negotiations as "meetings" under the Open Meeting Law contradicts the previously "accepted practice" that negotiations are conducted in private, without any meaningful amendment to the Open Meeting Law giving rise to such a change. Therefore, the historical practice that school board labor negotiations with teachers were held in closed sessions gives interpretative weight to our finding that negotiations between Committee and Association are not "meetings" under the Open Meeting Law.

¶ 32. Second, this Court's ruling in Blum v. Friedman, which declined to consider whether contract "negotiations" between a town and a municipal service provider were "meetings" under the Open Meeting Law, does not undermine our conclusion here. 172 Vt. at 623 n.2, 682

19

A.2d at 1206. In <u>Blum</u> a town resident sought to attend contract negotiations between the Town of Winhall and The Stratton Corporation, a municipal service provider which provided services to local home owners, including "road maintenance and improvements under a contract negotiated with the town." <u>Id</u>. at 622-23, 682 A.2d at 1205. The resident asserted that the superior court erred in excluding the general public from the contract negotiations between the Town and the Corporation under the Open Meeting Law exception in 1 V.S.A. § 313(a)(1). On appeal, this Court noted in a footnote:

> The superior court assumed that the negotiating sessions are meetings for purposes of the act . . . and neither party has contested that assumption. Similarly, the parties agree that § 313(a)(1) applies, although the "meetings" are negotiating sessions in which the other party to the contract is present. We rely on both assumptions without examining their accuracy.

<u>Id</u>. at 623 n.2, 682 A.2d at 1206 (emphasis added). By adding this note, rather than validating the assumptions made by the court and the parties, the Court expressly reserved judgment on the question of whether "meetings" under the Open Meeting Law include bilateral negotiations.

¶ 33. With all of these considerations in mind, we hold that collective bargaining labor negotiations between Committee and Association, are not "meetings" under the Open Meeting Law. Because these negotiations fall outside the scope of the Open Meeting Law, it is not necessary for us to consider whether either party is placed at a substantial disadvantage in open forum or whether either party engaged in unfair labor practices.

<u>The dismissal for lack of subject matter jurisdiction is reversed. The matter is remanded with instruction to the court to enter a declaration that the Open Meeting Law does not apply to labor negotiations between a district school board or its designee and the employees of the district.</u>

FOR THE COURT:

_____

Associate Justice

20