NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 87

No. 2019-025

| | |
|---|---|
| Burlington School District | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Adam Provost and Seven Days | May Term, 2019 |

Helen M. Toor, J.

Joseph A. Farnham and Kevin J. Coyle of McNeil, Leddy & Sheahan, P.C., Burlington, for
  Plaintiff-Appellee.

Craig Weatherly, Burlington, for Defendant-Appellant Provost.

Thomas A. Little of Little & Cicchetti, PC, Burlington, for Defendant-Appellee Da Capo
  Publishing, Inc. d/b/a Seven Days.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Dooley, J. (Ret.),
             Specially Assigned


¶ 1. **REIBER, C.J.** In this declaratory judgment action, defendant Adam Provost appeals the civil division's determination that plaintiff Burlington School District could disclose, in response to a newspaper's public records request, an unredacted copy of a Resignation Agreement reached by the District and Provost concerning his employment with the District. Provost argues that the civil division: (1) lacked subject matter jurisdiction to consider the District's request for declaratory relief regarding a matter within the exclusive purview of the Public Records Act (PRA); and (2) erred by granting the District's request for declaratory relief

based on its conclusion that Provost had waived any objection to release of the agreement, even assuming it had jurisdiction to consider the request. We affirm.

¶ 2. By terms of a written agreement, Provost resigned from his employment at the Burlington School District, effective January 2, 2018. In relevant part, the agreement provided that "any action taken by the District to comply with its legal obligations shall not be a violation of this Resignation Agreement," and that if the District believed it was required to release the agreement to the public, the District would notify Provost's attorney. The agreement further stated that the District is a public entity subject to the PRA and that, upon request for the Resignation Agreement, "the District will determine whether it must release the requested document[] under the provisions of applicable law."

¶ 3. On June 18, 2018, a reporter from defendant Seven Days made a PRA request for, among other documents, a copy of any separation agreement between Provost and the District that existed. Within days, the District's attorney informed Provost's attorney of its intent to release the agreement to Seven Days. The two attorneys exchanged emails[1] concerning the Seven Days records request, but ultimately the District disagreed with Provost's position that disclosure of an unredacted copy of the agreement would violate both the terms of the agreement and the PRA.

¶ 4. On June 25, 2018, the District commenced the instant declaratory judgment action, naming both Provost and Seven Days as defendants. The complaint, which was submitted under

---

[1] Following Provost's appeal to this Court, the District filed a motion asking this Court to accept as part of the record on appeal several emails exchanged between the District's and Provost's attorneys concerning the reporter's request. While acknowledging that this Court's review is ordinarily confined to the record in the trial court proceedings, see In re K.F., 2013 VT 39, ¶ 26, 194 Vt. 64, 72 A.3d 908, the District argues that this is one of those rare cases where we should accept the emails as part of the record on appeal even though they were not made part of the record below. According to the District, not doing so would put Provost in a better position than if he had properly preserved and adjudicated before the civil division his jurisdictional challenge to the District's declaratory judgment action. We deny the District's motion, but, as indicated above, conclude that the record supported the civil division's exercise of its jurisdiction to adjudicate the District's request for declaratory relief and that the civil division did not err in granting the requested relief under the circumstances of this case.

2

seal along with both unredacted and redacted versions of the Resignation Agreement, summarized the email exchange between the parties' counsel. The complaint set forth the District's position that Provost's proposed redactions were unwarranted under Vermont law and recounted Provost's threat of litigation against the District. The District asked the court to review in camera the unredacted and redacted versions of the agreement and to declare that the agreement should be provided to Seven Days. The District also requested a speedy hearing in furtherance of obtaining a declaratory judgment. See V.R.C.P. 57 ("The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.").

¶ 5. In his answer, under the heading "affirmative defenses," Provost argued that: (1) the District failed to state a claim upon which relief could be granted because it did not "plead sufficiently the existence of a justiciable controversy" establishing subject matter jurisdiction under the Declaratory Judgment Act (DJA); (2) the District should be denied its requested relief because its conduct towards, and response to, Seven Days constituted a breach of its contractual obligations to Provost and demonstrated its unclean hands; and (3) the District disregarded its obligations under the PRA to protect Provost's personal documents from disclosure, thereby injuring him. Provost also objected to the District's request for in camera review, contending that the request was premature until the court determined that there was a justiciable controversy, that the PRA did not protect the agreement from disclosure in its entirety, and that in camera review was necessary to determine the scope of any declaratory relief available to the District.

¶ 6. Following a July 31, 2018 status conference with the parties' attorneys, the civil division issued the following order:

> Seven Days has until 8/10/18 to file an answer/counterclaim. Adam Provost has until 9/15 to complete discovery, and until 9/28 to file his opposition to disclosure of his "Resignation Agreement" with [the District]. [The District] and Seven Days have until 10/18 to reply to Provost's opposition. The matter will then be under advisement.

On August 9, in compliance with the court's scheduling order, Seven Days filed an amended answer and asserted a counterclaim against the District seeking production of an unredacted copy of the resignation agreement, as well as attorney's fees.[2]

¶ 7. On October 10, 2018, two weeks after the September 28 deadline for Provost's opposition to disclosure of an unredacted copy of the agreement had come and gone without any filing from Provost, the civil division deemed any objection by Provost waived and authorized release of the Resignation Agreement to Seven Days. Provost filed a motion to reconsider, arguing that he had stated his objections in his answer and that the July 31 scheduling order did not require him to repeat those objections. He asked the court to vacate its October 10 order and "proceed to dispose of this case under the provisions of" the DJA. The civil division denied the motion for reconsideration, noting that Provost's answer had been filed three weeks before the July 31 scheduling order, indicating that the court was expecting Provost to make a legal argument supporting his stated defenses. The court noted, for the record, that it had reviewed the relevant documents in camera before issuing its October 10 ruling. Accordingly, the court dismissed the counterclaim and entered judgment in the District's favor after stating that it had ruled on the merits of the case.

¶ 8. On appeal, Provost argues that the civil division: (1) lacked subject matter jurisdiction to consider the District's complaint; and (2) erred by entering judgment in favor of the District without addressing the merits of the District's complaint based on its determination that Provost had waived his objections to the complaint. We conclude that, under the specific circumstances of this case, the District could invoke the DJA to seek resolution of the parties'

---

[2] At oral argument on appeal, Seven Days sought assurance that in those rare situations where declaratory relief pursuant to the DJA effectively preempted adjudication under the PRA, a prevailing requestor could still collect attorney's fees as permitted under the PRA. Seven Days also acknowledged, however, that in this case it ultimately did not pursue attorney's fees. Nor has Seven Days argued on appeal that the civil division erred in this case by not awarding it attorney's fees. Accordingly, we do not address this issue.

dispute concerning disclosure of the Resignation Agreement. Hence, given Provost's failure to raise specific legal arguments in support of his position that the PRA prohibited disclosure of the agreement, the civil division did not err in entering judgment in favor of the District and allowing disclosure of an unredacted copy of the agreement to Seven Days.

¶ 9. As an initial matter, we emphasize that Provost's "jurisdictional" argument does not concern subject matter jurisdiction but rather challenges the authority of the civil division to adjudicate the District's request for declaratory relief under the circumstances of this case. We have required preservation of challenges such as this that do not concern "the power of a court to hear and determine a general class or category of cases." Lamell Lumber Corp. v. Newstress Int'l., Inc., 2007 VT 83, ¶ 6, 182 Vt. 282, 938 A.2d 1215. That includes challenges concerning whether the court can exercise its authority to adjudicate matters pursuant to specific statutory criteria or the particular circumstances of the case. See State v. Thompson, 2011 VT 98, ¶ 9, 190 Vt. 605, 30 A.3d 671 (mem.) (stating that "erroneous exercise of jurisdiction is not the type of fundamental jurisdictional defect that would compel this Court, absent a timely objection on jurisdictional grounds, to vacate any order pursuant to the exercise of that jurisdiction").

¶ 10. Without question, the civil division possessed subject matter jurisdiction over the general type of controversy brought before it in this case. The civil division has "original and exclusive jurisdiction of all original civil actions," apart from exceptions not relevant to this case. 4 V.S.A. § 31(1). Moreover, within that general jurisdiction, the divisions of the superior court have the power under the DJA "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 12 V.S.A. § 4711; see also id. § 4713 ("A contract may be construed either before or after there has been a breach thereof."). Hence, the civil division "presumptively" had jurisdiction over the declaratory judgment action in this case, pursuant to 12 V.S.A. § 4711. Negotiations Comm. of Caledonia Cent. Supervisory Union v. Caledonia Cent. Educ. Ass'n, 2018 VT 18, ¶ 10, 206 Vt. 636, 184 A.3d 236 (concluding that civil division could

5

adjudicate request for declaratory relief requiring interpretation of Open Meetings Law). In short, Provost was required to preserve, by raising before the civil division, his contention that the court lacked authority under the circumstances of this case to adjudicate the District's request for declaratory relief.

¶ 11. He failed to adequately do so in this case. See In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (stating that issue for appeal is not properly preserved unless it is presented "with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it" (quotation omitted)). As noted, Provost listed as an affirmative defense in his complaint the absence of a justiciable controversy to confer subject matter jurisdiction upon the civil division to adjudicate the District's request for declaratory relief under the DJA. Provost missed the civil division's deadline for opposing disclosure of the Resignation Agreement, however, and therefore never provided the court with a legal analysis in support of his argument that there was no justiciable controversy under the DJA. Indeed, Provost appeared to abandon his jurisdictional argument when, in his motion seeking reconsideration of the court's determination that he had waived any opposition to disclosure of the agreement, he explicitly asked the court to dispose of the case under the DJA.

¶ 12. Provost argues, however, that the civil division erred: (1) by concluding that his failure to meet the court's deadline for opposing the District's request for declaratory relief constituted a waiver of any and all opposition to the District's disclosure of an unredacted copy of the Resignation Agreement; and (2) by failing to address the merits of the District's application for declaratory relief. Provost asserts that his answer opposed the District's request for declaratory relief on several grounds and that the July 31 scheduling order merely indicated the matter would be placed under advisement after the deadlines had passed for submitting memoranda of law. According to Provost, the civil division effectively entered a default judgment, as evidenced by the absence of any motion to dismiss or for summary judgment.

6

¶ 13.   Notwithstanding Provost's failure to adequately preserve his challenge to the civil division's authority to adjudicate the District's complaint, we conclude that the District's complaint for declaratory relief pled sufficient allegations to support the court's exercise of its authority to provide relief under the DJA.   Further, because Provost never presented any legal analysis as to why the PRA prohibited disclosure of an unredacted copy of the Resignation Agreement, the civil division did not err in entering judgment in favor of the District.

¶ 14.   Although the DJA does not enlarge a court's subject matter jurisdiction, it "allows parties who have a dispute within a court's jurisdiction to petition that court for declaratory relief at an early stage of the proceedings." Vt. State Emps.' Ass'n, Inc. v. Vt. Criminal Justice Training Council, 167 Vt. 191, 194, 704 A.2d 769, 771 (1997).   The first prerequisite for adjudication under the DJA is that there be an actual—not merely theoretical—controversy. Cupola Gulf Course, Inc. v. Dooley, 2006 VT 25, ¶ 14, 179 Vt. 427, 898 A.2d 134 (per curiam) ("An action for declaratory relief must be based upon an actual controversy, the claimed result of which is not based upon fear or anticipation, but is reasonably to be expected." (quotation omitted)); cf. Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (stating that court must "entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding").

¶ 15.   A court faced with a request for declaratory relief "must look at the litigation situation as a whole in determining whether it is appropriate to" entertain the request for such relief. Country Home Prods., Inc. v. Schiller-Pfeiffer, Inc., 350 F. Supp. 2d 561, 566 (D. Vt. 2004). In this case, the District and Provost had entered into a contract acknowledging the obligation of the District, as a public entity subject to the PRA, to release the Resignation Agreement "under the provisions of applicable law."   After Seven Days requested a copy of any separation agreement between the two, the District and Provost disputed whether the PRA authorized public disclosure

7

of an unredacted copy of the agreement. Having determined that both the PRA and the terms of the Resignation Agreement warranted disclosure of an unredacted copy of the Agreement, and faced with Provost's insistence that neither the Agreement nor the PRA permitted release of an unredacted copy of the Agreement to Seven Days, the District sought declaratory relief. In doing so, the District named as defendants both Provost and Seven Days as defendants—to bring together in one action all parties with an interest in the matter.

¶ 16. Under these circumstances, it was entirely appropriate for the superior court to exercise its general jurisdiction to adjudicate the District's request for declaratory relief. The District and Provost had reached a legal stalemate over whether release of an unredacted copy of the Agreement to Seven Days would violate not only the PRA, but also their Agreement, which would expose the District to a breach-of-contract claim. At the same time, Seven Days was demanding release of the Agreement under the PRA. Thus, the District was "facing the threat of an actual injury to a protected legal interest." Cf. Negotiations Comm. of Caledonia Cent. Supervisory Union, 2018 VT 18, ¶ 11 (concluding that civil division appropriately addressed claim for declaratory relief concerning applicability of Open Meetings Law, which was not excepted from civil division's general jurisdiction). The controversy among the parties was actual, not theoretical, and declaratory relief would serve to clarify the legal relations of the three parties and provide certainty regarding the controversy among them.

¶ 17. Provost emphasizes that the PRA does not explicitly permit a custodian to seek declaratory relief when confronted with a public records request. But neither does the PRA bar obtaining such relief within the civil division's general jurisdiction. See City of Garland v. Dallas Morning News, 22 S.W.3d 351, 357-58 (Tex. 2000) (concluding that under then-current version of state's Public Information Act, which neither expressly recognized nor expressly prohibited governmental entity from seeking declaratory relief in response to public records request, municipality was not barred from seeking declaratory relief in response to news agency's public

8

records request). This case is easily distinguishable from older cases cited by Provost that involved plaintiffs' attempts to use the DJA to circumvent exclusive administrative remedies provided by statute. See Molesworth v. U. of Vt., 147 Vt. 4, 7, 508 A.2d 722, 723 (1986) (rejecting plaintiff's assertion that she could seek declaratory relief on her claim that she was entitled to resident in-state tuition, where "the Legislature ha[d] delegated authority to the Trustees of the University of Vermont to determine eligibility for reduced tuition charges"); Demag v. Am. Ins. Cos., 146 Vt. 608, 610, 508 A.2d 697, 698 (1986) (concluding that plaintiff was not entitled to declaratory relief where Workers' Compensation Act contained procedures for enforcement of rights and remedies before commissioner and explicitly excluded all other rights and remedies).

¶ 18.    Finally, insofar as Provost failed to articulate any argument, or make any proffer, in the proceedings before the civil division explaining why the PRA prohibited disclosure of an unredacted copy of the Resignation Agreement, the civil division did not err in granting the District's request for declaratory relief and entering judgment in favor of the District.

Affirmed.

FOR THE COURT:

_____
Chief Justice

9